# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **MAURICE N. ROSGA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | No. 05-2145-KHV |
| **ST. LOUIS MOTORSPORTS, LLC d/b/a** ) | |
| **BENTLEY ST. LOUIS,** ) | |
| ) | |
| **Defendant.** ) | |
| _____) | |

## MEMORANDUM AND ORDER

Maurice N. Rosga brings suit against St. Louis Motorsports, LLC d/b/a Bentley St. Louis, alleging breach of contract, breach of express warranties, breach of implied warranties, violation of Kansas Consumer Protection Act, K.S.A § 50-623 et seq., and replevin. Plaintiff seeks damages and attorneys' fees for the prosecution of this action. This matter comes before the Court on defendant's Motion To Dismiss For Lack Of Personal Jurisdiction (Doc. #8-1) filed April 22, 2005. For reasons set forth below, the Court finds that defendant's motion should be sustained in part and overruled in part.

## Legal Standards

The standard which governs a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), Fed. R. Civ. P., is well established. Plaintiff bears the burden of establishing personal jurisdiction over defendant. Before trial, however, when a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials, plaintiff need only make a prima facie showing. The allegations in the complaint must be taken as true to the extent they are uncontroverted by

defendant's affidavits. If the parties present conflicting affidavits, all factual disputes are resolved in plaintiff's favor, and plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party. Behagen v. Amateur Basketball Ass'n, 744 F.2d 731, 733 (10th Cir. 1984), cert. denied, 471 U.S. 1010 (1985); see also Williams v. Bowman Livestock Equip. Co., 927 F.2d 1128, 1130-31 (10th Cir. 1991); Rambo v. Am. S. Ins. Co., 839 F.2d 1415, 1417 (10th Cir. 1988).

**Factual Background**

Plaintiff resides in Overland Park, Kansas. St. Louis Motorsports, LLC is a Missouri limited liability company and does business as Bentley St. Louis in St. Louis, Missouri. Defendant is a registered dealer for Bentley Motors, Inc. In November of 2004, Bentley Motors, Inc. began advertising in the Kansas City metro area and named defendant as a Bentley dealer in the advertisements.[1] During plaintiff's initial visit to defendant's business and prior to the negotiation of any contracts with defendant, he told defendant that he had recently moved to Las Vegas, Nevada and was selling his Kansas home. Plaintiff claims that he is a resident of both Kansas and Nevada, see Plaintiff's Response To Defendant's Motion To Dismiss For Lack Of Personal Jurisdiction (Doc. #10) filed May 16, 2005 at 8, but asserts in his verified petition that he resides in Kansas. The Court resolves this discrepancy in plaintiff's favor and for the purposes of this motion, presumes that plaintiff's residence is in Kansas.

**I.    1996 Bentley Turbo "R"**

On April 1, 2004, plaintiff executed an order to purchase a used 1996 Bentley Turbo "R" from

---

[1] Bentley Motors, Inc. is not a party in this suit. Plaintiff does not dispute defendant's affidavits in which defendant points out that it did not contract for the advertising. Plaintiff has not offered any evidence of an agency relationship between defendant and Bentley Motors, Inc..

-2-

defendant, who knew that plaintiff resided in Johnson County, Kansas. Defendant told plaintiff that all of its cars had undergone a comprehensive 154-point inspection designed by Bentley engineers and that plaintiff's Bentley had been through this inspection before the sale. Plaintiff tendered a $20,000.00 down payment when the parties executed the agreement and $44,500.00 (plus additional fees, costs and taxes) at delivery.

On June 8, 2004, defendant delivered the vehicle to plaintiff at its dealership in St. Louis. Tom Schultz, defendant's sales manager, told plaintiff that the vehicle was in "perfect" condition. At delivery, plaintiff noticed and notified defendant about the following problems with the vehicle: the braking system squealed when engaged, the power steering system had unspecified problems, some interior lights did not work and the tires were not the tires which had been on the vehicle when the parties executed the purchase order. Defendant agreed to repair the problems and added power steering fluid to the vehicle. Relying on defendant's representations that it would fix the problems, plaintiff took possession of the vehicle.

On July 20, 2004, plaintiff returned the vehicle to defendant for the identified repairs. Defendant replaced all four tires and charged plaintiff 25 percent of the cost. Defendant replaced the defective interior light at no charge and stated that it would address the braking system and power steering problems. Defendant delivered the vehicle to plaintiff in Las Vegas, Nevada. Plaintiff was not satisfied with the braking and power steering systems and immediately contacted defendant. Defendant agreed to pay the cost of repairs by a repair shop in Nevada.

On September 14, 2004, plaintiff took the vehicle to Land Rover Las Vegas ("Land Rover") for a repair estimate. Land Rover estimated the cost of repair at $3,406.00 for the power steering rack and $702.00 for replacement of front brake pads and the left front rotor. Defendant refused to pay the entire

amount and offered to supply the power steering rack at its cost ($2,600.00). Plaintiff refused defendant's offer and had Land Rover repair the vehicle. Plaintiff spent $3,851.92 for the repairs, and defendant has not reimbursed him.

**II.     1973 Volkswagen Gazelle**

On April 14, 2004, plaintiff executed a consignment agreement with defendant regarding a 1973 Volkswagen Gazelle.[2] The agreement gave defendant the exclusive right to sell the Gazelle and upon sale, plaintiff would receive $10,000.00 in proceeds. The contract continued until defendant sold the car or plaintiff terminated the contract in writing. The brother of defendant's president picked up the Gazelle from plaintiff's residence in Kansas and transported it to defendant's showroom in St. Louis. On September 24, 2004, defendant notified plaintiff that it was unilaterally cancelling the consignment agreement. Plaintiff has attempted to recover the Gazelle on three occasions, but defendant has refused plaintiff's demands. Defendant remains in possession of the car. **III.    New Bentley**

On July 7, 2004, plaintiff entered into an agreement with defendant to purchase a new Bentley Continental convertible when it became available. Plaintiff agreed to pay the manufacturer's suggested retail price and tendered $1,000.00 in consideration. On December 29, 2004, defendant notified plaintiff that it was unilaterally cancelling the contract. Defendant, however, has retained plaintiff's $1,000.00.

**IV.    Counts**

Count I alleges that defendant breached its agreement to deliver the used Bentley in "perfect" condition, repair the vehicle and reimburse plaintiff for the repairs by Land Rover. In Counts II and III,

---

[2]     The record does not indicate where plaintiff kept the Gazelle at the time the parties executed the contract. The car had Kansas license plates.

plaintiff alleges that defendant breached express and implied warranties when it delivered the used Bentley in a condition that was not perfect, as warranted by the service manager. Count IV alleges that defendant violated the Kansas Consumer Protection Act ("KCPA"), K.S.A § 50-623 et seq., by (1) misrepresenting that the vehicle was in "perfect" condition; (2) failing to make promised repairs; (3) misrepresenting that it had completed repairs in a workmanlike manner; and (4) concealing specific defects in the vehicle. Count V claims that defendant committed breach of contract when it unilaterally cancelled plaintiff's contract to purchase the new Bentley convertible. Count VI alleges that defendant again violated the KCPA by preventing plaintiff from receiving a material benefit when it cancelled the contract to purchase the new Bentley convertible. In Count VII, plaintiff alleges that defendant committed breach of contract when it unilaterally cancelled the consignment agreement for the sale of the 1973 Volkswagen Gazelle. In Count VIII, plaintiff seeks replevin of the Gazelle.

Defendant contends that the Court must dismiss plaintiff's claims for lack of personal jurisdiction. See Fed. R. Civ. P. 12(b)(2). Specifically, defendant asserts that the Court cannot exercise personal jurisdiction because the Kansas long-arm statute does not confer jurisdiction and defendant does not have the required minimum contacts with the State of Kansas.

## **Analysis**

The Court has discretion to consider a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), Fed. R. Civ. P., based on affidavits and other written material. See Behagen, 744 F.2d at 733. If the Court so chooses, plaintiff must make only a prima facie showing of jurisdiction to avoid dismissal. See Wenz v. Memery Crystal, 55 F.3d 1503, 1505 (10th Cir. 1995). Of course plaintiff eventually must establish jurisdiction by a preponderance of the evidence, either at a pretrial evidentiary

hearing or at trial. Until such a hearing is held, a prima facie showing suffices, notwithstanding any contrary presentation by the moving party. See Kuenzle v. HTM Sport-Und Freizeitgerate AG, 102 F.3d 453, 456 (10th Cir. 1996). If defendants challenge the jurisdictional allegations, plaintiff must support the jurisdictional allegations of the complaint by competent proof of the supporting facts. Pytlik v. Prof'l Res., Ltd., 887 F.2d 1371, 1376 (10th Cir. 1989). All factual disputes, however, are resolved in plaintiff's favor. See id. Further, the allegations in the complaint must be taken as true to the extent that they are uncontroverted by defendant's affidavits. Intercon, Inc. v. Bell Atl. Internet Solutions, Inc., 205 F.3d 1244, 1247 (10th Cir. 2000) (only well-pled facts, as distinguished from conclusory allegations, accepted as true).

The Court applies a two-part test to analyze Rule 12(b)(2) motions to dismiss for lack of personal jurisdiction over a nonresident defendant. First, defendant's conduct must fall within a provision of the Kansas long-arm statute, K.S.A. § 60-308. Kansas courts construe the long-arm statute liberally to assert personal jurisdiction over nonresident defendants to the full extent permitted by the limitations of due process. Volt Delta Res. Inc. v. Devine, 241 Kan. 775, 777, 740 P.2d 1089, 1092 (1987). Second, defendant must have sufficient minimum contacts with Kansas to satisfy the constitutional guarantee of due process. See Equifax Servs., Inc. v. Hitz, 905 F.2d 1355, 1357 (10th Cir. 1990); see also World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291 (1980) (court may exercise personal jurisdiction over nonresident defendant only so long as "minimum contacts" exist between defendant and forum state).

### I.     **The Kansas Long-Arm Statute**

Defendant argues that this Court has no authority to exercise personal jurisdiction under the Kansas long-arm statute, K.S.A. § 60-308(b). That statute provides in part as follows:

> Any person, whether or not a citizen or resident of this state, who in person or through an agent or instrumentality does any of the acts hereinafter enumerated, thereby submits the person and, if an individual, the individual's personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of these acts:
>
> (1) Transaction of any business within this state;
> (2) commission of a tortious act within this state; . . .
> * * *
> (5) entering into an express or implied contract, by mail or otherwise, with a resident of this state to be performed in whole or in part by either party in this state.

Plaintiff asserts that personal jurisdiction is proper under the following subsections of the Kansas long-arm statute: (1) transaction of any business within the state" and (2) commission of a tortious act within this state. Plaintiff specifically argues that defendant transacted business in Kansas when it picked up his Gazelle from his Kansas residence and negotiated three separate contracts over the telephone.

"'Business' is transacted within the state when an individual is within or enters this state in person or by agent and, through dealing with another within the state, effectuates or attempts to effectuate a purpose to improve his economic conditions and satisfy his desires." Volt, 241 Kan. at 778, 740 P.2d at 1092. To determine whether a defendant has transacted business within the state, the Court must examine defendant's activities within Kansas which relate to the cause of action. See Envtl. Ventures, Inc. v. Alda Servs. Corp., 19 Kan. App.2d 292, 296, 868 P.2d 540 (1994). The transaction of business exists when the nonresident purposefully does some act or consummates some transaction in the forum state. Four B Corp. v. Ueno Fine Chems. Indus., Ltd., 241 F. Supp.2d 1258, 1261 (D. Kan. 2003) (quoting Anderson v. Heartland Oil & Gas, Inc., 249 Kan. 458, 467-68, 819 P.2d 1192, 1199 (1991)). Furthermore, there must be a nexus between the transaction of business and plaintiff's claim. Kluin v. Am. Suzuki Motor Corp., 274 Kan. 888, 896, 56 P.3d 829, 835 (2002). The negotiation of a sales transaction, or placement

of an order for goods, over the telephone with persons residing in Kansas does not confer personal jurisdiction. See Green Country Crude, Inc. v. Avant Petroleum, Inc., 648 F. Supp. 1443, 1451 (D. Kan. 1986).

Here, defendant entered the state through the brother of its president to take possession of the Gazelle. Defendant does not dispute that it authorized this act and contends that it was not improving its financial position by picking up the vehicle. Because defendant stood to gain financially through the sale of the Gazelle, this argument is disingenuous. This act constitutes transaction of business within the state, and a clear nexus exists between plaintiff's claims involving the Gazelle and defendant's actions within the State of Kansas. Accordingly, the Court finds that plaintiff has established a prima facie case of personal jurisdiction under K.S.A. § 60-308(b)(1) as to the consignment contract for the Gazelle (Counts VII and VIII). Because the long-arm statute confers jurisdiction under K.S.A. § 60-308(b)(1), the Court need not address whether defendant committed a tortious act with respect to the Gazelle.

Plaintiff has not alleged any other facts which constitute "transacting business" under K.S.A. § 60-308(b)(1). Plaintiff asserts that he negotiated the two Bentley contracts over the telephone, but telephone negotiations alone are not sufficient to subject defendant to personal jurisdiction. See Far W. Capital, Inc. v. Towne, 46 F.3d 1071, 1076, 1077 (10th Cir. 1995). Plaintiff relies on Sprint/United Management Co. v. RWT Tours, Inc., No. 04-2476-KHV, 2005 WL 914781, at *4-5 (D. Kan. Apr. 20, 2005), a case recently decided by this Court, to show that telephone calls are sufficient. In citing this case, plaintiff ignores the fact that in Sprint, defendant initiated the telephone contacts with plaintiff in Kansas to solicit its business. Here, plaintiff himself initiated the business contacts with defendant, executed the contracts in Missouri and tendered payment in Missouri. Furthermore, plaintiff took possession of the 1996 Bentley

in Missouri. Plaintiff also argues that Bentley Motors, Inc. advertised in Kansas, but he provides no evidence of (1) any agency relationship between defendant and the advertiser, or (2) any nexus between the advertising and plaintiff's claims under either Bentley contract.

Plaintiff does not contend that defendant committed any tort other than retaining possession of the Gazelle. K.S.A. § 60-308(b)(2) does not permit the court to exercise personal jurisdiction for plaintiff's Bentley claims (Counts I through VI) on the basis of an alleged tort involving the Gazelle.

Finally, plaintiff does not argue that K.S.A. § 60-308(b)(5) confers jurisdiction. The Court notes that even had plaintiff offered such argument, it could not exercise jurisdiction. K.S.A. § 60-308(b)(5) permits a court to assert personal jurisdiction when a defendant enters into a contract with a Kansas resident and the contract is to be performed in whole or part within the state. Plaintiff has offered no evidence that any portion of either Bentley contract was performed within the state or that the parties intended for any portion of those contracts to be performed within the state.

This Court may exercise personal jurisdiction over plaintiff's claims which involve the Gazelle (Counts VII and VIII). As to plaintiff's other claims, defendant's conduct falls outside the Kansas long-arm statute, and the Court may not exercise personal jurisdiction over defendant.

## II.    Due Process

The second aspect of the test is whether this Court's exercise of jurisdiction with regard to the Gazelle claims satisfies constitutional due process requirements. See Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). Due process requires "minimum contacts" between the nonresident defendant and the forum state. Id. This standard may be satisfied in one of two ways. First, specific jurisdiction exists over a matter in the forum state if defendant "purposely avails itself of the privilege of conducting activities

within the forum state, thus invoking the benefits and protections of its laws." Trierweiler v. Croxton & Trench Holding Corp., 90 F.3d 1523, 1534 (10th Cir. 1996) (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)). Second, general jurisdiction exists if "defendant's contacts with the forum state are so 'continuous and systematic' that the state may exercise personal jurisdiction over the defendant, even if the suit is unrelated to the defendant's contacts with the state." Trierweiler, 90 F.3d at 1533 (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415-16 & n.9 (1984)). In either case, defendant must reasonably be able to anticipate being haled into court in the forum state. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985). Also, jurisdiction in the particular case must be reasonable so as not to offend traditional notions of fair play and substantial justice. See World-Wide Volkswagen, 444 U.S. at 292.

Plaintiff does not assert that general jurisdiction is proper. Instead, plaintiff contends that defendant has sufficient minimum contacts as it (1) negotiated with plaintiff while he resided in Kansas; (2) entered the State of Kansas pursuant to the consignment agreement to pick up the 1973 Volkswagen Gazelle; and (3) advertised in Kansas. Defendant argues that required minimum contacts do not exist in this case because plaintiff initiated business transactions with it and that it believed that plaintiff resided in Las Vegas, Nevada.

Kansas may assert specific jurisdiction over out-of-state defendants if they have "purposefully directed . . . activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities." Burger King, 471 U.S. at 472. The Tenth Circuit applies a three-part test to determine specific jurisdiction:

> (1) the nonresident defendant must do some act or consummate some transaction with the

> forum or perform some act by which he purposely avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or results from the defendant's forum-related activities; and (3) the exercise of jurisdiction must be reasonable.

Packerware Corp. v. B & R Plastics, Inc., 15 F. Supp.2d 1074, 1078 (D. Kan. 1998); Dazey Corp. v. Wolfman, 948 F. Supp. 969, 974 (D. Kan. 1996). While solicitation by defendant is some evidence suggesting purposeful availment, phone calls and letters are not sufficient to establish minimum contacts. Far W. Capital, 46 F.3d at 1076, 1077.

Here, defendant entered Kansas to pick up plaintiff's Gazelle. This activity required sufficient effort and was not random, fortuitous or attenuated. See Barteldes v. Human Props., Inc., No. 98-2333-JWL, 1998 WL 928395, at *3 (D. Kan. Nov. 9, 1998) (delivery of automobile to Kansas resident sufficient contact for defendant to anticipate being haled into court). Counts VII and VIII involve the contract for the sale of the Gazelle and defendant's refusal to relinquish possession of it. These facts are sufficient for the exercise of personal jurisdiction over defendant on these claims. Defendant offers no evidence that defending these claims in Kansas would be unconstitutionally burdensome, unreasonable, inconvenient or otherwise offensive to "traditional notions of fair play and substantial justice." The Court finds that plaintiff has set forth a prima facie case of personal jurisdiction as to Counts VII and VIII, and jurisdiction in Kansas does not offend fair play and substantial justice.

The parties have not addressed whether the Court could apply the doctrine of pendent personal jurisdiction over claims for which the Court otherwise lacks personal jurisdiction. The Court concludes that it cannot. Typically, pendent personal jurisdiction may be asserted where the exclusive basis for personal jurisdiction is a federal claim that provides for extra-territorial service of process. Robinson v.

Penn Cent. Co., 484 F.2d 553, 554-56 (3d Cir. 1973); Rice v. NOVA Biomedical Corp., 763 F. Supp. 961, 966 (N.D. Ill. 1991). In diversity of citizenship cases, pendent personal jurisdiction applies to claims which "arise out of the same common nucleus of operative fact as does a claim that is within the in personam jurisdiction power of the court." 4A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil § 1069.7 (3d ed. 2002); see also Hargrave v. Oki Nursery, Inc., 646 F.2d 716 (2d Cir. 1980). Here, the events which give rise to plaintiff's claims involve three independent sets of facts. The Kansas long-arm statute permits jurisdiction over the two claims which arise from the contract for the sale of the Gazelle. The remaining claims arise from facts involving either a contract for the purchase of a 1996 Bentley or a contract for the purchase of a new Bentley. A district court may not reach beyond the forum state's long-arm statute merely because doing so would promote efficiency. Id. The Court finds that plaintiff's Counts I through VI do not arise from a common nucleus of fact as the claims asserted in Counts VII and VIII, and it cannot extend personal jurisdiction for these claims.

**IT IS THEREFORE ORDERED** that defendant's Motion To Dismiss For Lack Of Personal Jurisdiction (Doc. #8-1) filed April 22, 2005 be and hereby is **OVERRULED** in part and **SUSTAINED** in parts. **Counts I through VI** of the complaint are **DISMISSED without prejudice**.

Dated this 29th day of July, 2005 at Kansas City, Kansas.

s/ Kathryn H. Vratil
Kathryn H. Vratil
United States District Judge